**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **ULTRAFLO CORPORATION,** § | |
| § | |
| § | |
| **PLAINTIFF,** § | |
| § | |
| **v.** § | **CIVIL ACTION NO. 4:09-cv-00782** |
| § | |
| **PELICAN TANK PARTS, INC., ET AL.** § | |
| § | |
| **DEFENDANTS.** § | |
| § | |

---

**DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FRCP 8, FRCP**
**12(b)(6), & FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(c)**

Defendants Pelican Tank Parts, Inc. ("Pelican Tank"), Pelican Worldwide, Inc. ("Pelican Worldwide") and Thomas J. Mueller ("Mueller"), together with Pelican Tank and Pelican Worldwide, collectively ("Defendants"), file this motion to dismiss plaintiff Ultraflo Corporation ("Plaintiff's") lawsuit and its causes of action for trade secret misappropriation, unfair competition by misappropriation, civil conspiracy, and conversion under FRCP 12(b)(6) and FRCP 8.  A motion for judgment on the pleadings is also made pursuant to FRCP12(c).

For the reasons set forth in this motion,  Defendants argue: (1) Plaintiff has failed to re-plead in a manner to avoid preemption; and (2) that in its rush to re-plead to create subject matter jurisdiction and avoid preemption, Plaintiff both changed the factual basis of its lawsuit (claiming new trade secrets) and yet still failed to state plausible claims recognized by law so that dismissals of its causes of action are proper under either of FRCP 8, FRCP 12(b)6, or FRCP 12(c).

Date:  November 21, 2011

Respectfully submitted,

BUCHE & ASSOCIATES, P.C.

 /s/ John K. Buche
John Karl Buche (Texas Bar No. 24012352)
*Attorney–in–Charge*
Scott D. Compton (Texas Bar No. 24032088)

6363 Woodway, Suite 820
Houston, Texas 77098

(713) 589-2214 *Buche*
(713) 401-9451 *Compton*
(713) 583-9644 *Fax*

*Attorneys for Defendants Pelican Tank Parts, Inc., Thomas Joseph Mueller, and Pelican Worldwide, Inc.*

# TABLE OF CONTENTS

I.   INTRODUCTION & FACTS……………………………………………………… 1

II.  ARGUMENTS & AUTHORITIES…………………………………………………… 1

A.  The Doctrine of Preemption Requires Dismissal and/or Bars Plaintiff's State Claims that Fall within the Subject Matter of Copyright when the State Claims Seek to Protect Rights that are Equivalent to Exclusive Rights Protected by the Copyright Act………………………………………………………………………………..2

B. …As Replead, Ultraflo's Texas Causes of Action Should Be Dismissed on the Basis of the Doctrine of Preemption, Under FRCP 12(b)(6) for Failing to State a Claim, Under FRCP 8 for Failing to Plead a Proper Claim for Relief, or Judgment Should Be Rendered on the Pleadings under FRCP 12(c) because Plaintiff seeks Remedies that Are Not Recognized under Texas Law…………………………………………….…….6

1.  Trade Secret Misappropriation: Dismissal is Proper under FRCP 8, 12(b)(6), or 12(c) Because Under Texas Law, a Trade Secret Cannot exist for the physical dimensions of an item in the public domain and that can be purchased off the shelf………………………………………………....................................…….9

2.  Conversion: Dismissal is Proper under FRCP 8, FRCP 12(b)(6), and FRCP 12(c) Because Under Texas Law Conversion Does Not Exist for Intangible Property, which is Preempted, and Where Plaintiff has not Asserted Conversion of any other Tangible Property that Would be Actionable……………………………………………………………………14

3.  Conspiracy:  Dismissal is Proper Because of Either Preemption, under FRCP 8 for lack of a plausible claim, under FRCP 12(c), or under FRCP 12(b)(6) Because Under Texas Law Plaintiff has failed to State a Claim …………………….17

4.  Unfair Competition by Misappropriation: Dismissal is Proper Under the Doctrine of Preemption, or under FRCP 12(c), FRCP 12(b)(6), or FRCP 8, because Plaintiff has Misinterpreted Texas Law and Fails to State a Legally Cognizable Claim………………………………………………………….…20

III.  CONCLUSION …………………………………………………………………...28

# TABLE OF AUTHORITIES

## Cases

*Alcatel USA, Inc. v. DGI Technologies, Inc.*,
   166 F. 3d 772,785-89 (5th Cir. 1999) ................................................................. 5

*Ashcroft v. Iqbal*,
   129 S.Ct. 1937, 1949 (2009) ....................................................................... 7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ............................ 7

*Bonito Boats, Inc., v. Thunder Craft Boats, Inc.*,
   489 U.S. 141, 164, 109 S.Ct. 971, 982 (1989) ...................................... 11

*Butler, Jr., v. Continental Airlines, Inc.*,
   31 S.W.3d 642, 650 (2000) ....................................................................... 3

*Cable Elecs., Inc. v. N. Am. Cable Equip., Inc.*,
   2010 WL 1541504, at *3 (N.D.Tex.2010) ........................................... 22

*Carson v. Dynegy,*
   344 F.3d 446, 456-57 (5th Cir.2003) ................................................... 15

*Chauhan v. Formosa Plastics Corp.,*
   212 F.3d 595, 595 (5th Cir.2000) ........................................... 8, 13, 19

*City Bank v. Compass Bank,* 717 F.Supp.2d 599,
   611-12, 2010 WL 1959808, at *10 (W.D.Tex. May 12, 2010) .............. 16

*Collins v. Morgan Stanley Dean Witter,*
   224 F.3d 496, 499 (5th Cir.2000) .......................................................... 8

*Computer Assoc. Int'l, Inc. v. Altai, Inc.*,
   918 S.W.2d 453, 455 (Tex. 1996) ....................................................... 10

*Conan Properties, Inc. v. Conans Pizza, Inc.*,
   752 F.2d 145, 156 (5th Cir. 1985) ...................................................... 26

*CQ, Inc. v. TXU Mining Co.,*
   565 F.3d 268, 273 (5th Cir.2009) ....................................................... 10

*Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007) ................................. 7

*Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir.1995) ........................... 3, 5, 6

*Dealer Basic, L.L.C. v. American Auto Exchange, Inc.*,
   2007 WL 4836671 (N.D. Tex., September 22, 2008) .............................. 5

*Dresser-Rand Co., v. Virtual Automation, Inc.*,
  361 F.3d 831, 839-40 (5th Cir. 2004)................................................................. 23

*Elliott v. Tilton*,
  89 F.3d 260, 265 (5th Cir. 1996) ....................................................................... 18

*Finserv Cas. Corp. v. Settlement Funding, LLC*,
  724 F.Supp.2d 662, 674-76, 2010 WL 2757536, at *10 (S.D.Tex. July 13, 2010).................. 18

*Fotjik v. First Nat'l Bank of Beeville*,
  752 S.W.2d 669, 673 (Tex. App. -- Corpus Christi 1988),
  *writ denied per curiam*, 775 S.W.2d 632 (Tex. 1989)............................................ 18

*Gaia Techs. Inc. v. Recycled Prods. Corp.*,
  175 F.3d 365, 376 (5th Cir.1999) ....................................................................... 10

*Gemcraft Homes, Inc. v. Sumurdy*,
  688 F.Supp. 289 (E.D.Tex.1988)........................................................................... 5

*Gonzales v. Zamora*,
  791 S.W.2d 258, 264 (Tex. App.--Corpus Christi 1990, no writ)............................. 10

*Grand Time Corp. v. Watch Factory, Inc.*,
  2010 WL 92319, at * 3 (N.D.Tex. Jan. 06, 2010) ..................................................... 25

*Guidry v. American Pub. Life Ins.Co.*,
  512 F3d 177,180 (5th Cir.2007) ....................................................................... 7

*H. E. Butt Grocery Co. v. Moody's Quality Meats*,
  951 S.W.2d 33, 35 (Tex. App. Corpus Christi 1997)............................................... 11

*Huffmeyer v. Mann,* 49 S.W.3d 554, 558 (Tex.App.-Corpus Christi 2001, no pet.) ................... 16

*Hyde Corp. v. Huffines*,
  314 S.W.2d 763, 776 (Tex. 1958) ....................................................................... 10

*IAC, Ltd. v. Bell Helicopter Textron, Inc.*,
  160 S.W.3d 191, 197 (Tex.App. – Fort Worth 2005, no pet.)................................... 10

*Ins. Co. of N. Am. v. Morris*,
  981 S.W.2d 667, 675 (Tex.1998) ....................................................................... 18

*Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*,
  456 U.S. 844, 863(1982) ...................................................................... 11, 17

*Johnson v. Johnson*,
  385 F.3d 503, 529 (5th Cir.2004) ....................................................................... 7

**DEFENDANTS' MOTIONS TO DISMISS**

*Jones v. Bock,*
  127 S.Ct.910, 920-21 (2007) ................................................................ 7

*Juhl v. Airington,*
  936 S.W.2d 640, 644 (Tex.1996) ........................................................ 19

*K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv.,*
  314 S.W.2d 782, 785 (Tex. 1958) ...................................................... 10

*Kewanee Oil Co. v. Bicron Corp.,*
  416 U.S. 470, 476, 94 S.Ct. 1879, 1883 (1974) .............................. 11, 12

*Kinnear-Weed Corp. v. Humble Oil & Refining Co.,*
  150 F. Supp. 143, 159 (D. Tex. 1956), affd 259 F. 2d 398 (5th Cir. 1958) ............................ 11

*Leonard v. State,*
  767 S.W.2d 171, 175 (Tex. App. Dallas 1988) .................................. 12

*Luccous v. J. C. Kinley Co.,*
  376 S.W.2d 336, 338 (Tex. 1964) ...................................................... 10

*McClain v. State,*
  269 S.W.3d 191, 197 (Tex. App. Texarkana 2008) ............................ 12

*M-I L.L.C. v. Chad Lee Stelly et al.,*
  733 F.Supp.2d 759, (S.D. Tex. 2010) ........................................ 7, 15, 21

*Minka Lighting, Inc. v. Craftmade Intern., Inc.,*
  2002 WL 31495990 at *3 (N.D.Tex., November 4, 2002),
  *aff'd* 93 Fed.App. 214, 217-18 (Fed. Cir. 2004) ............................ 25, 26

*Nelson Radio & Supply Co. v. Motorola, Inc.,*
  200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925 (1953) .................................... 18

*Parker Barber & Beauty Supply, Inc. v. The Wella Corp.,*
  2006 WL 2918571, at * 2, 14 (Tex.App.—Austin, Oct. 11, 2006) .......................................... 26

*Pension Advisory Group, Ltd. v. Country Life Ins. Co.,*
  771 F.Supp.2d 680, 701 (S.D. Tex. 2011) .......................................... 27

*R2 Investments LDC v. Phillips,*
  401 F.3d 638, 642 (5th Cir.2005) ........................................................ 8

*Seatrax, Inc. v. Sonbeck Int'l, Inc.,*
  200 F.3d 358, 367-69 (5th Cir. 2000) ................................................ 27

*Sonnier v. State Farm Mutual Auto. Ins. Co.,*
  509 F.3d 673, 675 (5th Cir.2007) ........................................................ 8

**DEFENDANTS' MOTIONS TO DISMISS**

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,*
  365 F.3d 353, 362 (5th Cir.2004) ............................................................... 8

*Spectrum Creations, L.P. v. Carolyn Kinder International, LLC,*
  514 F.Supp.2d 934,50 (W.D.Tex. 2007) ...................................................... 6

*State v. Perry,*
  83 Ohio St.3d 41, 697 N.E.2d 624, 627 (1998) ........................................... 5

*Stewart & Stevenson Serv., Inc. v. Serv-Tech, Inc.,*
  879 S.W.2d 89, 98 (Tex. App--Houston [14th Dist.] 1994, writ denied)................................ 10

*Taco Cabana Int'l v. Two Pesos, Inc.,*
  932 F.2d 1113, 1123 (5th Cir.1991) ......................................................... 10

*Taquino v. Teledyne Monarch Rubber,*
  893 F.2d 1488, 1501 (5th Cir. 1990) ........................................................ 3

*Triple Tee Golf, Inc. v. Nike, Inc.,*
  485 F.3d 253, 261 (5th Cir.2007) ............................................................ 10

*Triplex Communications, Inc. v. Riley,*
  900 S.W.2d 716, 719 (Tex.1995) ............................................................. 19

*Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 ...................................................... 7

*U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.,*
  865 S.W.2d 214 (Tex. App.—Waco 1993), writ den'd (Mar. 30, 1994) ................................ 23

*United States ex rel. Berge v. Board of Trustees of Univ. of Ala.,*
  104 F.3d 1453, 1464 (4th Cir.1997) .......................................................... 5

*Wissman v. Boucher,*
  240 S.W.2d 278, 280 (Tex. 1951) ..................................................... 10, 11, 12

*Xpel Technologies Corp. v. American Filter Film Distributors,*
  2008 WL 3540345 at *6 (W.D.Tex., August 11, 2008) .......................................... 5

**Statutes**

17 U.S.C. § 101.................................................................................... 2, 5

17 U.S.C. § 102.................................................................................... 16

17 U.S.C. § 106 ................................................................................... 2

17 U.S.C. §301(a) ................................................................................ 6

28 U.S.C. § 1338(a)) .............................................................................. 5

## I.      INTRODUCTION & FACTS

Plaintiff Ultraflo Corporation ("Plaintiff") filed its "Second Amended Original Complaint" on November 2, 2011 (Court Doc.#118).  Plaintiff filed this amended complaint in response to the Court's order of October 18, 2011 (Court Doc.#116), which order gave the Plaintiff an opportunity to address deficiencies of subject matter jurisdiction and state law claims, which were held preempted.  (Court Doc.#116, page 15).  This second complaint amended Plaintiff's "First Amended Original Complaint (Court Doc.#67), which was filed on October 28, 2010.  Plaintiff's Second Amended Original Complaint was also accompanied by "Ultraflo's Memorandum in Support of Plaintiff's Second Amended Complaint" (Court Doc. #119).

Plaintiff now argues in its Memorandum in Support (Court Doc.#119) that the Court *does* have jurisdiction because of Copyright law, or under the Declaratory Judgment Act, but that Texas state claims which complain of copying of design drawings, designs, and three-dimensional valves are not preempted.  In addition, Plaintiff through its recent amendment changed its previously alleged "trade secrets" from *technical drawings* to now add unspecified *designs* and actual publicly available *butterfly valves* (for which there are no patents).  *See* Pltf.2nd Amended Compl. (Court Doc.#118); *Cf.*(Pltf.1st Amended Compl. (Court Doc.#67)).

## II.      ARGUMENTS & AUTHORITIES

Defendants assert the following arguments for why the Court should dismiss the Plaintiff's lawsuit.  For the sake of conciseness, relevant facts are incorporated into the arguments.

**A.** **THE DOCTRINE OF PREEMPTION REQUIRES DISMISSAL AND/OR BARS PLAIN-TIFF'S STATE CLAIMS THAT FALL WITHIN THE SUBJECT MATTER OF COPYRIGHT WHEN THE STATE CLAIMS SEEK TO PROTECT RIGHTS THAT ARE EQUIVALENT TO EXCLUSIVE RIGHTS PROTECTED BY THE COPYRIGHT ACT**

This Court duly noted that the Doctrine of Preemption applies where state causes of action assert rights and remedies that are exclusively governed by the Copyright Act (Court Doc.#116, pp.6, 9-10). Federal courts have exclusive original jurisdiction over claims of copyright infringement. That Federal Courts have exclusive jurisdiction of Copyright issues is clear. "The [federal] courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trade-marks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." 28 U.S.C. § 1338(a). The Copyright Act preempts state rights that cover works falling within the Act's subject matter, and protects rights which are equivalent to the exclusive rights within the scope of the Act. 17 U.S.C. § 301(a). Specifically, Section 301 of the Copyright Act provides:

> All legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 ... are governed exclusively by this Title ... [N]o person is entitled to any such right or equivalent right in any such work under the common law or statutes of any States.

More particularly, Section 106 of the Copyright Act grants the holder of a copyright the exclusive right to reproduce, distribute, perform, and display the copyrighted work. 17 U.S.C. § 106. In general, drawings, photographs, and other two-dimensional and three-dimensional expressions that visually depict three-dimensional objects are copyrightable. *See generally* P. Goldstein, Copyright Sec.2.5.3.2 (1989). Section 101's definition of "pictorial, graphic, and sculptural works" includes "two-dimensional and three-dimensional works of fine, graphic, and

applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101

The Fifth Circuit has established a two-part test to determine if Plaintiff's state law claims are preempted:  (1) whether the claims fall within the subject matter of copyright; and (2) whether the claim protects rights equivalent to any of the exclusive rights of a federal copyright. *Butler, Jr., v. Continental Airlines, Inc.*, 31 S.W. 3d 642, 650 (Tex.App.—Houston [1st Dist.] (2000) (citing *Daboub v. Gibbons,* 42 F.3d 285, 288-89 (5th Cir.1995) (emphasis added).  For instance, a state law claim is equivalent to a copyright claim where **the core of the state law theory of recovery goes to wrongful copying**.  *Id.* (emphasis added).  Likewise, a state law cause of action is equivalent to the rights granted by the Copyright Act if "**the mere act of reproduction, distribution, or display infringes it**."  *Id.* at 651 (citing *Taquino v. Teledyne Monarch Rubber,* 893 F.2d 1488, 1501 (5th Cir. 1990))(emphasis added).  In other words, "a state law claim is equivalent to federal copyright law rights if the elements of the state law cause of action would not establish qualitatively different conduct by the defendant than the elements for an action under the Copyright Act."  *Id.*

As the following excerpts from Plaintiff's most recent complaint show, this is still a case that entails, at core, preempted subject matter and remedies that are the exclusive domain of the Copyright Act:

| "Unfair Competition by Misappropriation and Misappropriation of Trade Secrets" |
| --- |
| The unauthorized activities by Mueller in retaining Ultraflo's confidential ***drawings***, and upon information and belief, ***the subsequent use of them by Pelican Tank to make competitive valves***, constitutes misappropriation of Ultraflo's valuable trade secrets.  *See* Second Amend.Compl., ¶19 (Court Doc.#118)(emphasis added). |

| "Conversion" |
| --- |
| The conversion of Ultraflo's proprietary ***drawings, designs and valves*** by Defendants   *See*  Second Amend.Compl., ¶16 (Court Doc.#118)(emphasis added). |

| "Application for Permanent Injunction" |
| --- |
| "Ultraflo respectfully requests that this Court grant a permanent injunction: (a) ***enjoining Defendants from disclosing or utilizing for their own use*** or benefit ***any of Ultraflos confidential and/or proprietary designs or drawings*** ….;" *See* Second Amend.Compl., ¶25(a) (Court Doc.#118)(emphasis added). |

| "Civil Conspiracy" |
| --- |
| "Mueller and Pelican Tank have conspired…to harm Ultraflo and unlawfully profit from the theft and ***copying of confidential design drawings*** …."   *See*  Second Amend.Compl.,   ¶21   (Court Doc.#118)(emphasis added). |

As the foregoing excerpts showcase, the Complaint of Plaintiff has been and remains principally about use of copyrightable subject matter, including drawings and designs—and the reproduction, display and distribution of the drawings/designs (Court Doc.#118).  Thus, as plead consistently for years, Plaintiff's entire action is preempted by the Copyright law because Plaintiff seeks to remedy uses of drawings and designs which are the province of Copyright law.

The current Complaint is likewise all consistent with a record made in the state court hearing in response to Defendants' discovery request seeking, "all documents that identify, embody, or otherwise contain the trade secrets [Plaintiff] allege have been misappropriated," where counsel for Plaintiff stated to the Judge, "I think that's been taken care of because ***it is about the drawings*** and we're going to exchange those."   (*See* Court Doc.#100, Exhibit 1, Court Doc.#100-2, p. 24:20-25, brackets/emphasis added).  It is unmistakable that Plaintiff's claims, even as amended, are equivalent to claims under the federal copyright laws since the elements making up Plaintiff's causes of action do not establish qualitatively different modes of conduct on the part of Defendants that would be substantially different from an action brought under the

Copyright Act.  *See Butler* at 651 (citing *Alcatel,* 166 F.3d at 787; *Daboub,* 42 F.3d at 290).  As *Butler* points out, "[f]ederal courts have repeatedly recognized that allowing state claims **where the core of the complaint centers on wrongful copying** would render the preemption provisions of the Copyright Act useless."  *Id*. at 651(emphasis added, citing *State v. Perry,* 83 Ohio St.3d 41, 697 N.E.2d 624, 627 (1998); *see United States ex rel. Berge v. Board of Trustees of Univ. of Ala.,* 104 F.3d 1453, 1464 (4th Cir.1997); *see also Daboub,* 42 F.3d at 290 & n. 8); *see* 28 U.S.C. § 1338(a)) and the Federal Copyright Statute (17 U.S.C. § 101, *et seq.*) which "completely preempts practically all state law causes of action falling within its scope."  *See Tavormina*, 10 F.Supp.2d at 732-733 (citing *Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir.1995); *Gemcraft Homes, Inc. v. Sumurdy*, 688 F.Supp. 289 (E.D.Tex.1988) (federal exclusivity of a copyright claim is so strong that an unstated copyright claim preempts explicitly worded state law claim)).  If any of the Plaintiff's claims are within the scope of the Copyright Act, those claims are preempted.

A variety of courts have rendered similar holdings, including: *Alcatel USA, Inc. v. DGI Technologies, Inc*., 166 F. 3d 772,785-89 (5th Cir. 1999)(court overturning jury verdict in Plaintiff's favor on unfair competition by misappropriation claim due to federal copyright preemption); *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995)(upholding finding of preemption of misappropriation claim relating to a rock song); *Dealer Basic, L.L.C. v. American Auto Exchange, Inc.*, 2007 WL 4836671 (N.D. Tex., September 22, 2008)(finding copyright absolutely preempts an unfair competition by misappropriation of software, i.e., copyrightable subject matter); *Xpel Technologies Corp. v. American Filter Film Distributors*, 2008 WL 3540345 at *6 (W.D.Tex., August 11, 2008)(discussing difference between preemption of trade secret claims and unfair competition by misappropriation); *Spectrum Creations, L.P. v. Carolyn Kinder Inter-*

*national, LLC*, 514 F.Supp.2d 934, 50 (W.D.Tex. 2007)("to the extent that the unfair competition claim is based on misappropriation of copyrightable designs, it appears that it would be preempted by the Copyright Act even though the trade-secret misappropriation claim is not preempted.").

Defendants have steadfastly maintained that Plaintiff's claims for unfair competition by misappropriation, to the extent they could be deciphered and have been plead, would be preempted by the Copyright Act.  Defendants raised this issue on several occasions in this proceeding and prior proceedings, including at Court Doc.#82 (page 3-4)(citing *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir.1995) and 17 U.S.C. §301(a)).  In addition, while it has been difficult to assess the basis of Plaintiff's claims because of Plaintiff's evolving allegations, Defendants again raised the Copyright preemption issues in a motion for leave to file a reply (Court Doc.No.113), and the issues were also raised in Defendants' answer (Court Doc.#67, p.13), as well as in a motion to dismiss filed in a prior Texas state court (based on preemption).

Defendants provide additional, more detailed arguments regarding why the Plaintiff's causes of action are preempted in the following subsections.

**B.    AS REPLEAD, ULTRAFLO'S TEXAS CAUSES OF ACTION SHOULD BE DISMISSED ON THE BASIS OF THE DOCTRINE OF PREEMPTION, UNDER FRCP 12(B)(6) FOR FAILING TO STATE A CLAIM, UNDER FRCP 8 FOR FAILING TO PLEAD A PROPER CLAIM FOR RELIEF, OR JUDGMENT SHOULD BE RENDERED ON THE PLEADINGS UNDER FRCP 12(C) BECAUSE PLAINTIFF SEEKS REMEDIES THAT ARE NOT RECOGNIZED UNDER TEXAS LAW**

In addition to the discussion in prior sections about dismissal based on the Doctrine of Preemption, the Court has authority to dismiss a suit under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted if the complaint does not state factual allegations showing that the right to relief is plausible and above mere speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007);  *Jones v. Bock*, 127 S.Ct.910, 920-21 (2007).  Under Federal

Rule 12(c), a judgment may be had on the pleadings for similar reasons.  *See Guidry v. American Pub. Life Ins.Co.,* 512 F3d 177,180 (5th Cir.2007)("The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss.").  A court may dismiss a complaint for "failure to state a claim upon which relief can be granted.  FRCP 12(b)(6); *see M-I L.L.C. v. Chad Lee Stelly et al.,* 733 F.Supp.2d 759, (S.D. Tex. 2010). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.' " *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).  A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955).  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*  A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (citation omitted).

When considering a Rule 12(b)(6) motion to dismiss, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir.2004); *see also Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir.2007).  A district court can consider the content of the

pleadings, including attachments thereto, as well as documents attached to the motion, if they are referenced in the plaintiff's complaint and are central to the claims. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 499 (5th Cir.2000). Furthermore, a Court may refer to matters of public record when deciding a motion to dismiss. *Chauhan v. Formosa Plastics Corp.,* 212 F.3d 595, 595 (5th Cir.2000).

Ultimately, the question for the court to decide is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. The court must accept well-pleaded facts as true, but legal conclusions are not entitled to the same assumption of truth. *Iqbal,* 129 S.Ct. at 1950 (citation omitted). But the court should not "'strain to find inferences favorable to the plaintiffs'" or "accept 'conclusory allegations, unwarranted deductions, or legal conclusions.'" *R2 Investments LDC v. Phillips,* 401 F.3d 638, 642 (5th Cir.2005)(quoting *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.,* 365 F.3d 353, 362 (5th Cir.2004)).

Under FRCP 8, the Court can also dismiss a claim where a Plaintiff fails to state a plausible claim for relief under the law. *See Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949-50 (2009)("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. [A] complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement…To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face… The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully….[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions , are not entitled to the assumption of truth."); *see also Bell Atlantic Corp v. Twombly,* 550 U.S.544, 555 (2007)("…a plaintiff's obligation to provide

the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a for-mulaic recitation of the elements of a cause of action will not do…."); 

In this case, Plaintiff alleges causes of action for conversion, unfair competition, misap-propriation of trade secrets, civil conspiracy, and exemplary damages.  Plaintiff's complaint does not show a right to relief that is plausible and above mere speculation under any of the facts of the case, as plead, or when one considers the public record underlying the dispute.

1. **Trade Secret Misappropriation: Dismissal is Proper under FRCP 8, 12(b)(6), or 12(c) Because Under Texas Law, a Trade Secret Cannot exist for the physical dimensions of an item in the public domain and that can be purchased off the shelf**

Plaintiff cannot claim as a "trade secret" any designs, or three-dimensional objects (like butterfly valves) that the pleadings and public record clearly demonstrate are publicly available to the world and can be purchased by anyone.  Plaintiff's reticence to consistently plead or dis-close what it considers its trade secret is no accident, but is calculated in the hope that it can somehow make it to a jury and unleash a chest of vagaries and clichés about copying and general unfairness on a jury.[1]  But, Plaintiff simply has not set forth the essential elements necessary to state a claim upon which relief can be granted, namely, that any legally cognizable "trade secret" property has been misappropriated.  *Id*.  Trade secret misappropriation in Texas requires that the plaintiff actually own a trade secret.  *See IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d

---

[1] It was not the Defendants' understanding that when the Plaintiff was permitted an opportunity to replead to see if it could establish jurisdiction, that it would be permitted to change the entire subject matter of the case to include for the first time trade secrets or other alleged property never previously disclosed.  Plaintiff makes "useful article" ar-guments for the first time in its late defense to preemption.  To the extent Plaintiff now seeks to change its "trade secrets" from specific valve drawings litigated for *years* to 'functional useful article' designs that it has never pre-viously disclosed, this subject matter should be barred under FRCP 26(a), 26(e) and as a sanction under FRCP 37(c) because the entire case to date, including discovery, expert opinions, and trial preparation has been based on claims of trade secrets being identified as very specific drawings.  The prejudice to Defendants occasioned to such a change is significant and if permitted, and certainly warrants additional discovery to Defendants if allowed.

191, 197 (Tex.App. – Fort Worth 2005, no pet.)("[t]o prove an action for trade-secret misappropriation, the plaintiff must establish it owned a trade secret").

Under Texas law, the elements of misappropriation of trade secrets are: (1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant used the trade secret without authorization from the plaintiff. *CQ, Inc. v. TXU Mining Co.,* 565 F.3d 268, 273 (5th Cir.2009)(quoting *Gaia Techs. Inc. v. Recycled Prods. Corp.,* 175 F.3d 365, 376 (5th Cir.1999)).  A trade secret is defined as a "'formula, pattern, device or compilation of information used in a business, which gives the owner an opportunity to obtain an advantage over his competitors who do not know or use it.' " *Triple Tee Golf, Inc. v. Nike, Inc.,* 485 F.3d 253, 261 (5th Cir.2007) (quoting *Taco Cabana Int'l v. Two Pesos, Inc.,* 932 F.2d 1113, 1123 (5th Cir.1991)); *Computer Assoc. Int'l, Inc. v. Altai, Inc*., 918 S.W.2d 453, 455 (Tex. 1996); *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 776 (Tex. 1958).

The key part of the definition of trade secret is secrecy.  *Luccous v. J. C. Kinley Co*., 376 S.W.2d 336, 338 (Tex. 1964); *Wissman v. Boucher*, 240 S.W.2d 278, 280 (Tex. 1951); *Stewart & Stevenson Serv., Inc. v. Serv-Tech, Inc*., 879 S.W.2d 89, 98 (Tex. App--Houston [14th Dist.] 1994, writ denied); *Gonzales v. Zamora*, 791 S.W.2d 258, 264 (Tex. App.--Corpus Christi 1990, no writ).  The word "secret" implies that the information is not generally known or readily available by independent investigation. *Zamora*, 791 S.W.2d at 264; *Richardson & Assoc., Inc*., 718 S.W.2d at 837.  The procedure or device may be based on a previously existing idea in the industry and still be entitled to protection, so long as the procedure or device is not generally known. *K & G Oil Tool & Serv. Co. v. G & G Fishing Tool Serv*., 314 S.W.2d 782, 785 (Tex. 1958);  *H.*

*E. Butt Grocery Co. v. Moody's Quality Meats*, 951 S.W.2d 33, 35 (Tex. App. Corpus Christi 1997).

A pleading or public record that <u>admits</u> that the alleged "trade secret" is a design that is publicly available is one that fails as a matter of law under FRCP 12(b)(6) or 12(c).  *See Wissman v. Boucher*, 150 Tex. 326, 330 (Tex. 1951)("…pole is based on familiar mechanical means and principles that are quite obvious to and easy to imitate by any reasonably experienced machinist that might see one for the first time or purchase it on the open market.  Under these latter circumstances, the exposure of the device to the public by advertisement or sale definitely operates to destroy any legal protection the claimed originator might otherwise assert on the basis of a trade secret.").

As even the U.S. Supreme Court has stated:

> [t]he owner of a trade secret is not entitled to prevent others from using **public information** to replicate his product, nor may the owner prevent others from making similar products which are not derived from the trade secret.

*Kewanee Oil Co. v. Bicron Corp*., 416 U.S. 470, 476, 94 S.Ct. 1879, 1883 (1974) (emphasis added); *see also Bonito Boats, Inc., v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 164, 109 S.Ct. 971, 982 (1989) *citing Inwood Laboratories, Inc. v. Ives Laboratories, Inc*., 456 U.S. 844, 863(1982)("**[w]here an item in general circulation is unprotected by patent, '[r]eproduction of a functional attribute is legitimate competitive activity**")(emphasis added).  No cause of action for breach of confidence can accrue to the owner of an alleged trade secret by reason of the use or publication of such secret by another, after the owner has revealed his secret to the public by the sale of articles incorporating the secret.  *Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 150 F. Supp. 143, 159 (D. Tex. 1956), affd 259 F. 2d 398 (5th Cir. 1958).  The [products] are not trade secrets because they have been released into the public domain. "'Matters of

general knowledge in an industry cannot be appropriated by one as his secret.'" *Wissman v. Boucher*, 240 S.W.2d 278, 280 (Tex. 1951)(quoting Restatement, Torts, ch. 36, p.7)). "Clearly, if an article that is a trade secret becomes known to the community, it loses its status as a trade secret." *Leonard v. State*, 767 S.W.2d 171, 175 (Tex. App. Dallas 1988).  "The bell, once rung, cannot be unrung.  Once in the public domain, the trade secret must remain in the public domain."  *McClain v. State*, 269 S.W.3d 191, 197 (Tex. App. Texarkana 2008); *see also Kewanee v. Bicron*, 416 U.S. 470, 484 (1974)("By definition a trade secret has not been placed in the public domain."); *McClain v. State* at 197)("Although the [products] may be difficult to find due to their age and obsolete status, the [products]--once having become public knowledge--remain public knowledge.").

In the instant case, public records, and the Plaintiff's own pleadings undeniably assert that they are seeking to claim a trade secret for designs of non-patented *butterfly valves* publicly sold by Plaintiff, and which any person can buy off-the-shelf and observe.  *See Inwood Laboratories, Inc. v. Ives Laboratories, Inc*. at 863.  The Plaintiff's Second Amended Complaint (Court Doc.#118, p.6, ¶17), complains: "Pelican Tank also knew that it could generate substantial revenues if it were able to capture all or some portion of Ultraflo's revenues *from the sale of the copied valve*."  In other words, Plaintiff complains of copying of a valve line that it sells to the public.  Further, at page 7, ¶20, Ultraflo complains: "By misappropriating the Ultraflo *butterfly valves*, *valve features and components*, Defendants have obtained a free ride…."

Plaintiff is not complaining about a valve burglary, so it is clear that at page 3, ¶9 Plaintiff is really complaining about sales of a *butterfly valve* similar to a butterfly valve line openly sold to the public by Plaintiff: "…the Pelican Tank Defendants began selling a *valve similar to Ultraflo's valve*."  Plaintiff is upset that Defendants allegedly took:  "…Ultraflo's design of one

of the series of Ultraflo valves."   Plaintiff is truly complaining because Pelican Worldwide is competing with it in a crowded industry.   Not only are such claims an abhorrent use of the courts to restrain legitimate competition, but these pleadings clearly contradict the law of what can be a trade secret as announced in the above referenced *Wissman v. Boucher, Leonard v. State, Kewanee v. Bicron, Inwood Laboratories, Inc. v. Ives Laboratories, Inc*. line of cases.

In considering a FRCP 12(b)(6) challenge, the Court is free to look to the public record when deciding a motion to dismiss.   *Chauhan v. Formosa Plastics Corp.,* 212 F.3d 595, 595 (5th Cir.2000).   Along this vein, and consistent with cases like *Inwood Laboratories,* there is no prohibition on copying non-patented and publicly available items or products.[2]   In Court Doc.#68, para 22, Ultraflo's Answer to Counterclaims, Plaintiff even admits: "Ultraflo admits it has no patents related to the valves forming the basis of this lawsuit…"   Likewise, the public record, including the documents of record filed in this lawsuit, proves that the 390 butterfly valves and related designs now claimed as trade secrets have been in the public domain since the early 1990's.   (Court Doc.#48, p. 48, ll. 14-15) ("Plaintiff's counsel admitting, "we've been selling the 390 series since early '90s through predecessor owners and entities").   The public record also demonstrates that the 390 Series butterfly valve has been made publicly available through advertisements.   (Court Doc.#71-41, Ex. VV, Prod. Doc. PEL000151-154) (Printable brochures of Plaintiff's 390 Series butterfly valve located on Plaintiff's website demonstrating that its 390 Series butterfly valves cannot as a matter of law be a trade secret); (Court Doc.#71-1, Decl. of John K. Buche).   And it is this same 390 Series butterfly valve that Plaintiff claims as being the valve involving trade secrets.   (Court Doc.#48, p. 48, ll. 9-10 )(Plaintiff's counsel admitting, "For the sake of the Court, it's the 390 series that is in dispute").

---

[2] *See also Wissman v. Boucher*, 150 Tex. 326, 330 (Tex. 1951).

A variety of documents are also of public record because they have been attached and filed with the Court in Defendants' Motion for Partial Summary Judgment on the basis of lack of trade secrets (*See* Court Doc.#71).  Among these are statements, which are admissions by Plaintiff that the alleged party to have misappropriated alleged trade secrets was not subject to any confidential relationships.  Specifically, Plaintiff has admitted that DEFENDANT MUELLER was never required to sign a covenant not to compete, any confidentiality agreements, non-disclosure agreements, or work-for-hire agreements, which fact was admitted by Ultraflo's 30(b)(6) corporate representative, Mike Lurk.  *See* Court Doc.#71-4, Ex. B (Lurk Depo. at 68:5-69:10).

**2.  Conversion: Dismissal is Proper under FRCP 8, FRCP 12(b)(6), and FRCP 12(c) Because Under Texas Law Conversion Does Not Exist for Intangible Property, which is Preempted, and Where Plaintiff has not Asserted Conversion of any other Tangible Property that Would be Actionable**

In this Court's ruling that Plaintiff's claim for conversion is preempted (Court Doc.#116, pp.12-13), it duly noted "Ultraflo does not specifically allege that the drawings on which Defendants rely in producing their competing butterfly valve are the same pieces of paper originally possessed by Ultraflo, but rather that the drawings depict a valve the design of which is Ultraflo's property.  Such a claim is clearly one for conversion of intellectual property, and therefore preempted by the Copyright Act."   In response to the Court's order to replead, Plaintiff reasserted its conversion claim and made the following changes, highlighted below:

| 1st Amended Compl. (Court Doc.#66, ¶ 13) | "The conversion of Ultraflo's proprietary <u>design drawings</u> by Defendants acting in concert and separately have and will cause Ultraflo to suffer immediate and irreparable harm. Although the extent of the loss cannot be accurately determined, it will be substantial." |
|---|---|
| 2nd Amended Compl. (Court Doc.#118, ¶16) | "The conversion of Ultraflo's proprietary <u>drawings, designs and valves</u> by Defendants acting in concert |

|  | and separately have and will cause Ultraflo to suffer immediate and irreparable harm. Although the extent of the loss cannot be accurately determined, it will be substantial." |

The Fifth Circuit cited with approval sources which noted that preemption does occur where the plaintiff alleges only the "'unlawful retention of its intellectual property rights and not the unlawful retention of the tangible object embodying its work.' " *Carson v. Dynegy,* 344 F.3d 446, 456-57 (5th Cir.2003)); *see also M-I, L.L.C. v. Stelly,* 733 F.Supp.2d 759, 792 (S.D.Tex.2010).

Plaintiff's above referenced amendment is a distinction without a difference and does not change the operation of preemption because the core of the claim is about exclusively preempted Copyright subject matter. Plaintiff is still complaining of "proprietary drawings" as opposed to "proprietary design drawings." Even with the addition of "designs and valves"—a half-hearted amendment at best—it is not clear that these "designs" are something other than intangible intellectual property. It appears very clear that the complaint is still an attempt to protect intellectual property of some variety through Texas conversion law. However, the claim is still preempted because there is no claim for conversion to intellectual property that is not preempted by the Copyright Act. (Court Doc.#116, pp.12-13)(*citing M-I, L.L.C. v. Stelly,* 733 F.Supp.2d 759, 792 (S.D.Tex.2010). *To the extent the Plaintiff is now seeking to protect some never previously asserted right to useful articles like physical butterfly valves and designs, it was not the understanding of Defendants that the Court, when it granted leave to allow Plaintiff an opportunity to replead proper jurisdiction, would permit Plaintiff to change the entire basis of this case (especially since discovery is closed and expert reports have been finalized). Any changes of such variety are objected to and barred by FRCP 26(a), 26(e), and FRCP 37(c) because they cause surprise and materially prejudice Defendants in their case based on a different set of facts.*

Plaintiff's memorandum accompanying its Second Amended Complaint (Court Doc.#119, p.10) is revealing also because it admits: "….the conversion claim focus on the *proprietary nature* of the valves themselves…." and "…*Defendants converted the intangible* ability to produce the tangible valves as evidenced by the tangible valves and drawings…."  These claims are still preempted by Copyright law as held by *Daboub v. Gibbons,* 42 F.3d at 289 and *M-I L.L.C., 733 Supp.2d* at 792 (finding that plaintiff's conversion claim is preempted "to the extent that it covers tool drawings, designs, and other matter subject to copyright protection").  But, even beyond preemption, the reworded complaint for conversion also fails under FRCP 12(b)(6) because Plaintiff comes nowhere close to properly pleading the elements of a cause of action for conversion under Texas law, requiring: (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for the return of the property. *See M-I L.L.C.,* 733 F.Supp.2d at 792; *City Bank v. Compass Bank,* 717 F.Supp.2d 599, 611-12, 2010 WL 1959808, at 10 (W.D.Tex. May 12, 2010) (citing *Huffmeyer v. Mann,* 49 S.W.3d 554, 558 (Tex.App.-Corpus Christi 2001, no pet.)).  Here, Plaintiff makes no allegation that it first had legal possession or entitlement to any particular, decipherable piece of property. There is no statement that Defendants exercised control of any specific physical property in a manner that was unlawful and unauthorized, to the exclusion of Plaintiff's rights.  Finally, there is no allegation whatsoever that Plaintiff demanded return of any property or that Defendants refused any such demand.  *See M-I L.L.C.,* 733 F.Supp.2d at 792.  Furthermore, Plaintiff's cause of action for conversion is improper and was brought in bad faith because the law is well settled that a party may lawfully acquire an unpatented commercially available product of another for

the purposes of examination and copying. *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 863(1982)("[w]here an item in general circulation is unprotected by patent, '[r]eproduction of a functional attribute is legitimate competitive activity").

### 3.   Conspiracy:  Dismissal is Proper Because of Either Preemption, under FRCP 8 for lack of a plausible claim, under FRCP 12(c), or under FRCP 12(b)(6) Because Under Texas Law Plaintiff has failed to State a Claim

Defendants agree with the Court's legal analysis about preemption of the conspiracy claims in its order of October 18, 2011 (Court Doc.#116, pp.13-14), as well as Judge's Ellison's analysis in *M-I L.L.C.* stating "the intent element of a conspiracy claim does not constitute a qualitatively different conduct where the element of intent only goes to the intent to form an agreement to copy and use." *M-I, L.L.C.,* 733 F.Supp.2d at 791. For brevity, Defendants will not reproduce each of those cases cited by the Court, but they are all on point for this instant set of facts.

Despite being given the opportunity to amend the complaint in a meaningful way that might have avoided preemption, Plaintiff has not made any legitimate amendments. On the contrary, Plaintiff changed <u>one word</u> to the complaint relating to conspiracy, which word actually accentuates that Plaintiff's claims tread on Copyright law. Specifically, by adding the word "designs" Plaintiff made clearer that the real complaint speaks to subject matter and relief that is equivalent to Copyright law.[34]

---

[3] If Plaintiff desired to try and assert a proper claim under the Copyright Act, it could have also done so in the amendment, by minimally referencing what specific drawing or design that it alleged to be copyrighted, attached a copy of the registered design or drawing, or three-dimensional object, and proceeded.

[4] Plaintiff also objects to this amendment because it goes beyond amending for jurisdictional reasons but seeks to change the subject matter of the claim where discovery is over, expert reports have been finalized, and it creates surprise and prejudice to Defendants under FRCP 26(a), 26(e), and FRCP 37(c).

| 1st Amended Compl. (Court Doc.#66, ¶18) | "Mueller and Pelican tank have conspired with one another to deprive Ultraflo of its valuable rights and interests in its design drawings and its butterfly valves…have entered into a conspiracy to harm Ultraflo and unlawfully profit from the theft and copying of confidential design drawings and appropriation the butterfly valves." |
|---|---|
| 2nd Amended Compl. (Court Doc.#118, p.7, ¶21) | "Mueller and Pelican tank have conspired with one another to deprive Ultraflo of its valuable rights and interests in its design drawings and its butterfly valve **designs**….have entered into a conspiracy to harm Ultraflo and unlawfully profit from the theft and copying of confidential design drawings and appropriation the butterfly valve **designs**." |

Separate and apart from the Doctrine of Preemption, the Court can also dismiss the Plaintiff's claims according to any of FRCP 12(c), FRCP 8, or FRCP 12(b)(6) by reason of failure to state a plausible claim under law, according to the public record, or the facts.  The elements of civil conspiracy in Texas are: (1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means); (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result. *Finserv Cas. Corp. v. Settlement Funding, LLC,* 724 F.Supp.2d 662, 674-76, 2010 WL 2757536, at *10 (S.D.Tex. July 13, 2010)(citing *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex.1998)).

In this case, Plaintiff's conspiracy allegation clearly does not state any form of claim with respect to DEFENDANT MUELLER and the PELICAN DEFENDANTS as a matter of law because **a corporation cannot conspire with its employees because the acts of a corporation's agents are deemed to be the acts of the corporation itself.**  *Fotjik v. First Nat'l Bank of Beeville*, 752 S.W.2d 669, 673 (Tex. App. -- Corpus Christi 1988), *writ denied per curiam*, 775 S.W.2d 632 (Tex. 1989); *see also Nelson Radio & Supply Co. v. Motorola, Inc*., 200 F.2d 911, 914 (5th Cir. 1952), *cert. denied*, 345 U.S. 925 (1953);  *see also Elliott v. Tilton*, 89 F.3d 260,

265 (5th Cir. 1996)(noting that under Texas law "a corporation or other company cannot conspire with itself, no matter how many of its agents participate in the complained of action").  As indicated in Plaintiff's recent complaint at ¶8 (Court Doc.#118): "The Pelican Tank Defendants are competitors of Ultraflo who, upon information and belief, hired Mueller as an employee, agent or representative…"  Thus, Plaintiff's 2nd Amended Complaint states a legal impossibility. Under the law of corporations, a corporation is a person, and acts through its agents and employees.  A company cannot conspire with itself.

In addition, a "'civil conspiracy requires specific intent' to agree 'to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means.'" *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex.1996)(quoting *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 719 (Tex.1995)).  A Court may refer to matters of public record when deciding a motion to dismiss.  *Chauhan v. Formosa Plastics Corp.,* 212 F.3d 595, 595 (5th Cir.2000).  A variety of matters have been referenced in the public record now concerning the lack of trade secrets and the lack of conspiracy, including: (Court Doc.#71, MSJ of No Trade Secrets); (Court Doc.#99, Reply to Resp. to MSJ on Conspiracy).  Without belaboring the Court on every document cited in those briefs, and that are matters of public record, Defendants would point out that a conspiracy requires a meeting of the mind to do something unlawful—or in this case take some form of property legitimately belonging to Plaintiff.  As pointed out above, Plaintiff ignores the fact that of the three sheets of drawings it now claims as trade secret, two of the sheets were actually created **after** Mueller's resignation from Ultraflo.  (Court Doc. #71-017, Ex. R, Prod. Doc. ULTRAFLOW0094-0096).  So, it is impossible for Defendants to have "conspired" to misappropriate these two drawings, or any others, unless of course Plaintiff is now making a claim that it was burglarized by Defendants after Mueller's resignation.

Toward the absence of any bona fide trade secret, or other property right, Plaintiff also ignores the fact that its general manager Mike Lurk admits that no confidential relationship exists with any third party to whom Ultraflo disseminated its 390 valve drawings—destroying any claim for trade secrets contained in the drawings or the right to exclusive possession of such drawings.  Court Doc. #71, Ex. B (Lurk Depo, pp. 25:5-28:24; pp. 30:24-31:16; pp. 33:14-34:9; pp. 173:4-176:19).  As such, the public record demonstrates  that Plaintiff has no specific facts to show it has a property right for Defendants to conspire to take from Plaintiff.  At most, Plaintiff has shown that Pelican Worldwide and Mueller spoke with one another in consideration of hiring Mueller.  Such a conversation is not a conspiracy.  It is a lawful activity to hire an employee, even if that employee possesses a particular skillset.

### 4.  <u>Unfair Competition by Misappropriation</u>: Dismissal is Proper Under the Doctrine of Preemption, or under FRCP 12(c), FRCP 12(b)(6), or FRCP 8, because Plaintiff has Misinterpreted Texas Law and Fails to State a Legally Cognizable Claim

As this Court correctly stated, "State law claims of unfair competition by misappropriation generally are preempted when the acts that form the basis of the claim 'touch on interests clearly protected by the Copyright Act.'"  *See* Court Doc. #116, p.10.  Even now as replead, Plaintiff's cause of action for unfair competition by misappropriation remains preempted as a matter of law.

In detail, Plaintiff made various amendments to its Complaint in response to this Court's ruling that Plaintiff's claims for unfair competition by misappropriation were preempted (Court Doc.#116, pp.10-11, 14-15).  For example:

| 1st Amended Compl. (Court Doc.#66, ¶¶14-17) | "….Pelican Tank knew that Mueller had access to Ultraflo's trade secrets and proprietary and confidential <u>designs drawings</u>" (¶14).<br><br>"…by Mueller in retaining Ultraflo's confidential design drawings…." (¶16). |
|---|---|
| 2nd Amended Compl. (Court Doc.#118, ¶17-20) | "….Pelican Tank knew that Mueller had access to Ultraflo's trade secrets and proprietary and confidential <u>designs and drawings</u>." (¶17).<br><br>"…by Mueller in retaining Ultraflo's confidential ~~design~~ drawings…." (¶16). |

Such amendments, which include the tweaking of one or two words, do nothing to change the substance or the core of the relief requested by Plaintiff, especially in light of the fact that, the remaining paragraphs of the Second Amended Complaint are identical to the First Amended Complaint.

The legality of Plaintiff's unfair competition claim, which involves drawings, designs and commercially available products was resolved recently in the matter of *M-I L.L.C. v. Stelly,* 733 F.Supp.2d 759, 791 (S.D. Tex. 2010). In that case, the Honorable Judge Ellison found that claims of unfair competition by misappropriation were preempted where the plaintiff was complaining about a defendant's use of "confidential information, **including tool drawings, designs, and specifications**…" *Id* at 769, **3-4 (emphasis added). Here, Plaintiff's superficial changes in the Second Amended Complaint fail to alter the legal outcome of preemption, or upset the rulings of other courts in this jurisdiction and elsewhere that have already ruled on these issues.

<u>Defenses to Unfair Competition by Misappropriation Claims Unrelated to Preemption</u>: Aside from the arguments justifying dismissal based on preemption, the case should be dismissed by reason of FRCP 8, FRCP 12(b)(6), and/or FRCP 12(c) because Plaintiff has miscon-

strued the law of unfair competition by misappropriation, and has failed to plead a legally cog-

nizable claim under applicable case law.  To prove unfair competition by misappropriation, a

plaintiff must establish: (1) the creation by plaintiff of a product through extensive time, labor,

skill, and money; (2) the use of that product by defendant in competition with plaintiff, thereby

giving the defendant a special competitive advantage because he was burdened with little or none

of the expense incurred by plaintiff in the creation of the product; and (3) commercial damage to

plaintiff. *See M-I L.L.C.,* 733 F.Supp.2d at 792; *Cable Elecs., Inc. v. N. Am. Cable Equip., Inc.,*

2010 WL 1541504, at 3 (N.D.Tex.2010) (citing *Alcatel USA, Inc. v. DGI Techs.,* 166 F.3d 772,

788 (5th Cir.1999)).  A correct interpretation of the applicable legal standard demonstrates that

Plaintiff's Complaint does not present a plausible claim of unfair competition by misappropria-

tion.

Plaintiff's claim of unfair competition by misappropriation expands well beyond Plain-

tiff's first plead trade secret theory, alleging, in part:

> "**Pleading further and in the alternative, Defendants also engaged in unfair competition by misappropriating Ultraflo's butterfly valves, valve features and valve components.**  Defendants have appropriated and used, in competition with Ultraflo, a unique pecuniary interest created by Ultraflo through its expenditure of labor skill and experience.  By misappropriating the Ultraflo butterfly valves, valve features and components, Defendants have obtained a free ride by avoiding the expense and burden of research and development of the competing butterfly valve causing commercial damage to Ultraflo."

*See* Paragraph 20 of Plaintiff's 2nd Amended Complaint (emphasis added).  In truth, Plaintiff

seeks to expand its trade secret misappropriation theory to preclude acts which are permissible

under hornbook trade secret law and which constitute fair competition.  Such expansion evisce-

rates the need for "secrecy" in trade secret litigation, and cannot be accepted as an appropriate

interpretation of Texas law.[5]   Because Ultraflo possesses neither secret, nor even substantially secret information relating to the designs of its commercially available 390 Series butterfly valve, it should not be permitted to proceed with litigation using a novel theory employing an even lower burden of proof.

As understood from its summary judgment briefing, Plaintiff's theory of unfair competition by misappropriation is founded on *U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc*., 865 S.W.2d 214 (Tex. App.—Waco 1993), *writ den'd* (Mar. 30, 1994), and *Dresser-Rand Co., v. Virtual Automation, Inc*., 361 F.3d 831, 839-40 (5th Cir. 2004)—which Plaintiff relies on to argue that a claim for misappropriation exists for something falling well-short of a trade secret under Texas law.   In actuality, Ultraflo's expanded theory of "unfair competition by misappropriation" is not supported by either *U.S. Sporting Goods or Dresser-Rand.*

*U.S. Sporting Products* and *Dresser-Rand*, as well as cases cited therein, share common threads not present in the instant case and therefore do not support Plaintiff's claim.   Each of those cases (a) either constitutes a type of licensing case, quasi-trademark palming-off case, or a waived-copyright case, where the defendant is accused of selling the plaintiff's actual product as its own in direct competition with that plaintiff, or (b) involves information for products that was misappropriated before the products became publicly available.   None of those fact patterns are present here.   For instance, in *U.S. Sporting Products* the dispute centered on extensive recordings of animals used by game hunters, which the defendant copied and resold as his own.   865 S.W.2d at 216.   The "sweat equity" in this case involved the time expended to record the animal noises and the substance of the case revolved around the defendant's sale of "misappropriated

---

[5] To the extent the Plaintiff seeks to use 'unfair competition by misappropriation' under Texas law to establish unlimited protections for three-dimensional valves sold openly in the public domain, it would also create a quasi-design patent, or quasi-trade dress right of infinite duration.

recordings."[6] Plaintiff's expanded theory of "unfair competition by misappropriation" is also not supported by *Dresser-Rand* because its 390 Series butterfly valves are publicly available, open for inspection, and incorporate industry standard design characteristics that are common amongst all competing butterfly valves on the market. Specifically, *Dresser-Rand* involved the alleged misappropriation of information relating to software and hardware for industrial control products which were not yet incorporated into a publicly available product. In effect, the claim in *Dresser-Rand* involved misappropriated <u>confidential</u> information, even if that information did not yet qualify as a trade secret. *Id*. at 837.[7]

Here, it is undisputed that Plaintiff's butterfly valves and designs—the items it claims to have been misappropriated under its new unfair competition theory—have been commercially available for years, even decades. As such, neither *U.S. Sporting Products* nor *Dresser-Rand* is analogous to Plaintiff's assertion of rights for designs of commercially available butterfly valves.

In fact, Plaintiff tacitly admits that it did not create the designs in question—or stated another way, it seeks to protect what it copied from another or what may otherwise be legally copied through simple inspection of its 390 Series butterfly valve. *See* Response to Motion for Partial Summary Judgment (Court Doc.#86) (Plaintiff goes so far as to admit that the genesis of its own valve may have originated from reverse engineering, wherein it states: "**at the very least, Ultraflo invested the time, money and labor to reverse engineer the products to create workable original drawings**." *Id*. at 11 (emphasis added)). In spite of such admission, Plaintiff would have this Court believe that these same acts, when applied to its competitors, constitute

---

[4] It is worth noting that although the Waco appellate court appears to consider the recordings uncopyrightable (*see Id*. at 218), such recordings would clearly meet the definition of copyrightable subject matter as original sound recordings under 17 U.S.C. § 102(a)(7). It is not clear if the recordings lacked a federal registration, thus leading to the action proceeding in state court under alternate theories, or whether the litigants knowingly or unknowingly waived challenges based on preemption based on being unfamiliar with the federal authorities.

[7] (Court noting Defendant "signed the contract acknowledging that Dresser-Rand was entrusting Apix with trade secrets *and other confidential information*")(italics added).

the unfair trading on Plaintiff's alleged "sweat equity," which is in actuality the sweat equity of a company that developed the butterfly valve later copied by Plaintiff.

Moreover, Ultraflo's assertion that *U.S. Sporting Products and Dresser-Rand* stand for the proposition that producing non-patented, publicly available butterfly valves amounts to actionable, tortious conduct, directly contradicts its own earlier admissions[8] as well as settled law. For instance, in *Minka Lighting, Inc. v. Craftmade Intern., Inc*., 2002 WL 31495990 at 3 (N.D.Tex., November 4, 2002), *aff'd* 93 Fed.App. 214, 217-18 (Fed. Cir. 2004), the court ruled that defendants did not infringe the plaintiff's design patent, since the accused products were not substantially similar to the design patent. *Id*. at 1.  As a result, the court held that plaintiff's misappropriation claim failed as a matter of law, since it merely amounted to a claim that "Defendant unfairly competed by marketing, offering for sale, and selling substantially similar ceiling fans, thereby misappropriating Plaintiffs' fan's appearance," but where Defendants similar ceiling fans did not infringe any patent rights.  *Id*. at 3.

In a similar manner, Plaintiff wants this Court to unrightfully enforce its unfair competition claim even though the manufacture and sale of a competing butterfly valve does not violate a patent, trademark, copyright, or trade secret right.  Plaintiff should not be allowed to assert a vague "Plan B" theory in addition to its trade secret misappropriation claim as a means to confuse a jury or obtain relief which is not supported by the law in the event its trade secret misappropriation claim fails.  In light of the pleadings on file, the public record, and the legal history of the causes of action at hand, Plaintiff's 2nd Amended Complaint fails to state a viable claim as a matter of law under FRCP 8, FRCP 12(b)(6) or FRCP 12(c).

---

[8] Plaintiff "concedes it would have been lawful to reverse engineer the valve or gain possession of the dimensions through proper means and through inspection and analysis."  (Response to Motion for Partial Summary Judgment (Court Doc.#86) at 40–41); "Ultraflo concedes there is nothing wrong with reverse engineering."  (*Id*. at 27 (bold added)).

Plaintiff's unique interpretation of the law does not find support in other cases either, and courts have resisted expanding the theory to such extremes.  Other cases discussing this more general "unfair competition by misappropriation" claim, border on quasi-trademark cases.  *See*, e.g., *Grand Time Corp. v. Watch Factory, Inc*., 2010 WL 92319, at * 3 (N.D.Tex. Jan. 06, 2010)(discussing motion to dismiss claim for "unfair competition by misappropriation" relating to unauthorized use of "Just Bling" trade name and marketing strategy); *Conan Properties, Inc. v. Conans Pizza, Inc*., 752 F.2d 145, 156 (5th Cir. 1985)(case involving unauthorized use of trademarks "or other pecuniary interest" in competition with the mark-holder).  However, when it comes to extending this broad theory to competitors selling similar unpatented, publicly available products, Courts have been less willing to do so.  For instance, in *Minka Lighting, Inc. v. Craftmade Intern., Inc*., 2002 WL 31495990 at 3 (N.D.Tex., November 4, 2002), *aff'd* 93 Fed.App. 214, 217-18 (Fed. Cir. 2004), the court held that the plaintiff's misappropriation claim failed as a matter of law, since it merely amounted to a claim that "Defendant unfairly competed by marketing, offering for sale, and selling substantially similar ceiling fans, thereby misappropriating Plaintiffs' fan's appearance," but where Defendants products did not infringe any patent rights.  *Id*. at 3.

Likewise, Plaintiff is now complaining that Defendants commit misappropriation by merely making a competing butterfly valve that resembles its own product, even if doing so does not violate a patent, trademark, copyright, or trade secret right.  In truth, just like with ceiling fans, there are a variety of companies selling butterfly valves, all of which share similar characteristics.  Allowing Ultraflo's vague new claim to proceed is tantamount to asking the jury to return a verdict in its favor if it merely finds any similarity between the two valves.  This is inconsistent with well-established law governing trade secret misappropriation—the theory asserted

throughout this case—and impermissibly distorts Texas law.  *See*, e.g., *Parker Barber & Beauty Supply, Inc. v. The Wella Corp.*, 2006 WL 2918571, at * 2, 14 (Tex.App.—Austin, Oct. 11, 2006)(noting that although Plaintiff pled seven separate causes of action, including (1) misappropriation of proprietary, confidential, and trade secret information; (2) misappropriation of time, labor, skill, and money; and (5) unfair competition, these claims, and the others pled therein, all fall under the umbrella of "unfair competition" regarding the misappropriation of trade secrets, and analyzing affirming summary judgment in defendant's favor under the typical trade secrets rubric).

Finally, under FRCP 8, Ultraflo's Claim of "Unfair Competition by Misappropriation" is so vague that it fails to adequately put Defendants' on notice of alleged wrongdoing, or raise the potential of a disputed fact of wrongdoing.  Ultraflo claims that Defendants committed unfair competition merely by "misappropriating Ultraflo's butterfly valves, valve features and valve components."  *See* Plaintiff's 2nd Amended Complaint, Paragraph 20.  However, this statement is so vague and nonsensical that it fails to give Defendants fair notice of the allegedly wrongful act not already governed by Ultraflo's trade secret misappropriation allegation.  For example, Plaintiff claim of misappropriation of "the Ultraflo butterfly valves" does not give rise to an action for unfair competition by misappropriation.  *See Minka Lighting, Inc. v. Craftmade Intern., Inc*., discussed above.  Thus, Plaintiff's case warrants dismissal under FRCP 8.  *See Pension Advisory Group, Ltd. v. Country Life Ins. Co*., 771 F.Supp.2d 680, 701 (S.D. Tex. 2011)("plaintiff must more specifically plead the particular circumstances leading to the claim of 'unfair competition,' such [as] the specific product at issue, how Plaintiffs' product was used by Defendants in competition with Plaintiffs, and how that resulted in 'commercial damage' to Plaintiffs.").

Moreover, the Fifth Circuit has questioned—without ruling one way or the other—whether a separate cause of action for unfair competition by misappropriation of a non-trade secret even exists under Texas law.  In *Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 367-69 (5th Cir. 2000), not only did the court note the question of "the viability of common law unfair trade competition by misappropriation claims under Texas law," but also upheld the magistrate's decision to withhold a jury instruction on the claim, since "Seatrax's general allegation of unfair competition without additional qualifying language to identify a specific cause of action under unfair competition did not provide adequate notice of its claim."   Here, like in *Seatrax*, Ultraflo is making a broad, general allegation of unfair competition without any meaningful factual support, thus negating the possibility of any plausible cause of action.

## III.      CONCLUSION

For the reasons stated herein, Defendants request that the Court dismiss with prejudice the causes of action by Plaintiff for trade secret misappropriation, unfair competition by misappropriation, civil conspiracy, and conversion.  Defendants seek such dismissals, including of the attendant requests for injunctions and exemplary damages,  by reason of the Doctrine of Preemption, and also under FRCP 12(b)(6), FRCP 8, and pursuant to FRCP12(c) as a judgment on the pleadings.  Also, in the alternative, if the Court fails to find jurisdiction, it has discretion under FRCP 12(b)(1) and 12(h)(3), or under case law surrounding the Declaratory Judgment Act to refuse to entertain the case.

Date:  November 21, 2011

Respectfully submitted,

BUCHE & ASSOCIATES, P.C.

 /s/ John K. Buche
John Karl Buche (Texas Bar No. 24012352)
*Attorney–in–Charge*
Scott D. Compton (Texas Bar No. 24032088)

6363 Woodway, Suite 820
Houston, Texas 77098

(713) 589-2214 *Buche*
(713) 401-9451 *Compton*
(713) 583-9644 *Fax*

*Attorneys for Defendants Pelican Tank Parts, Inc., Thomas Joseph Mueller, and Pelican Worldwide, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing:  DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FRCP 8, FRCP 12(B)(6), & FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(C)  was:

\___     Mailed via certified mail, return receipt requested; #_____
\__      Mailed regular U.S. mail;
\___     Sent via facsimile; and/or
\___     Delivered via courier service
\___     Delivered email PDF;
\_X\_\_   Uploaded via ECF

To the following opposing counsel on November 21, 2011

James M. McGraw
LOOPER, REED & McGRAW
1300 Post Oak Blvd, Suite 2000
Houston, Texas  77056

\_\_/s/\_*John K. Buche*_____
John K. Buche

---

**DEFENDANTS' MOTIONS TO DISMISS**

29