IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States District Court
Southern District of Texas
FILED

FEB - 2 2017

David J. Bradley, Clerk of Court

No. 15-20084

United States Court of Appeals
Fifth Circuit
**FILED**
January 11, 2017
Lyle W. Cayce
Clerk

ULTRAFLO CORPORATION,

Plaintiff - Appellant

v.

PELICAN TANK PARTS, INCORPORATED; THOMAS JOSEPH MUELLER; PELICAN WORLDWIDE, INCORPORATED,

Defendants - Appellees

4:09-CV-782

Appeal from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.
GREGG COSTA, Circuit Judge:

This appeal requires us to again consider the preemptive force of the Copyright Act. Plaintiff Ultraflo Corporation asserts an unfair competition by misappropriation claim under Texas law alleging that a competitor stole its drawings showing how to design valves and then used them to make duplicate valves. We have previously held that copyright preempts this Texas cause of action when the intellectual property at issue is within the subject matter of copyright. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785–89 (5th Cir. 1999). Ultraflo contends that its claim escapes preemption because its valve design, when separated from the drawing itself, is afforded no protection under the Copyright Act. Because copyright preemption prohibits state interference

with Congress's decision not to grant copyright protection just as much as it protects a decision to provide protection, the district court correctly found that the state claim is preempted.

I.

Ultraflo manufactures butterfly valves used in the transportation industry. With the help of its employee Thomas Mueller, Ultraflo redesigned its Model 390 butterfly valve. The new design was recorded in drawings that specify the valve's features and measurements.

Mueller ultimately left Ultraflo to work at Pelican—a competing valve manufacturer. Soon after, Pelican entered the market with a valve that Ultraflo contends was strikingly similar to its own.

Believing that Pelican hired Mueller to gain access to its design drawings and other intellectual property, Ultraflo sued Pelican and Mueller (jointly referred to as Pelican) in state court for conversion, civil conspiracy, unfair competition by misappropriation, and misappropriation of trade secrets. Pelican sought to remove the case to federal court, arguing that the state claims were preempted by the Copyright Act, but removal was untimely. Back in state court, Pelican won a motion to dismiss, which argued that the court lacked jurisdiction as the subject matter of the suit was subject to the copyright laws, because Ultraflo failed to respond.

Before the state suit was dismissed, Mueller registered valve drawings with the U.S. Copyright Office and filed a complaint in federal court, seeking declaratory relief that the drawings (1) were copyrightable subject matter, (2) belonged to Mueller, and (3) were not "works for hire" under the Copyright Act. Mueller then voluntarily dismissed his suit in an attempt to encourage settlement.

After the settlement failed to materialize, Ultraflo filed this federal action. It again asserted the state tort claims and also sought a declaratory

2

judgment that Mueller was using a copyright that did not belong to him. The district court *sua sponte* questioned whether Ultraflo's state claims were preempted by the Copyright Act. It ordered Ultraflo to file a second amended complaint "avoiding allegations of state law claims that are clearly preempted by federal law."

That pleading reasserts all of Ultraflo's state claims and notes that they arise from Pelican's "use of Ultraflo's [design] drawings to make actual valves." For example, it alleges that the "unauthorized activities by Mueller in retaining Ultraflo's confidential drawings [and] the subsequent use of them by Pelican . . . to make competitive valves, constitutes misappropriation of Ultraflo's valuable trade secrets." It further contends that Defendants engaged in unfair competition by misappropriating its "butterfly valves, valve features, and components."

Pelican subsequently filed a motion to dismiss on preemption grounds. The district court agreed that all but Ultraflo's trade secret claim were preempted by the copyright laws.[1]

In response, Ultraflo filed a third amended complaint that removed the preempted state claims and added a claim of copyright infringement. Pelican filed yet another motion to dismiss, seeking dismissal of the new copyright claim. The district court denied the motion because Ultraflo alleged "that Defendants infringed the drawings, not by taking the physical drawings, but by taking their intangible intellectual property, using it to make their own drawings and butterfly valve, and thereby infringing on Ultraflo's exclusive rights to reproduce its copyrighted work and to prepare derivative products based on the copyrighted work."

---

[1] The court's ruling on the trade secret claim accords with our subsequent decision in *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, which held that a claim under Texas trade secret law is not preempted. 836 F.3d 477, 486–88 (5th Cir. 2016).

No. 15-20084

The case proceeded to trial on the copyright and trade secret claims, both of which the jury rejected. After trial, Ultraflo moved under Rule 50(b) for judgment as a matter of law, or, alternatively, a new trial, on the ground that the unfair competition claim was not preempted. Finding that this was not the proper procedural vehicle to seek reconsideration of the pretrial dismissal of the unfair competition claim, the court treated the motion as one asserted under Rule 59. It declined to change its earlier ruling finding preemption.

II.

Ultraflo's appeal does not challenge the jury's rejection of its copyright and trade secret claims. It seeks only reversal of the pretrial dismissal of the unfair competition by misappropriation claim on preemption grounds.

Pelican asserts that Ultraflo waived its right to challenge the pretrial preemption ruling by not raising the issue during trial in a number of ways. According to Pelican, Ultraflo needed to request a jury charge on the dismissed state law claims, introduce an offer of proof to show the evidence that supported them, and seek entry of judgment as a matter of law on the state claims under Rule 50(a) before the case was submitted to the jury.

The delay and expense resulting from such futile measures is not required to preserve appellate review of a pretrial dismissal.[2] The final judgment rule prevented Ultraflo from appealing the Rule 12 dismissal until now. *See Dig. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (explaining that the rule provides that "a party is entitled to a single appeal, to be deferred until final judgment has been entered"). Indeed, Ultraflo

---

[2] Confusion may have arisen from Ultraflo filing a post-trial Rule 50(b) motion for judgment on the pleadings raising the preemption issue. The district court correctly noted that this was not a proper motion to challenge the pretrial dismissal of claims. As discussed *infra*, however, that is not because the same motion should have been asserted during trial. There was no need to do anything during or after trial to preserve appellate review of the Rule 12 dismissal.

4

No. 15-20084

followed the proper procedure by omitting the dismissed claims from its third amended complaint. *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 724 (5th Cir. 2015) (noting that requiring the repleading of claims dismissed with prejudice would be at odds with judicial efficiency and might be sanctionable). As those state claims were no longer part of the live pleading in the case, Ultraflo could not have taken any of the actions with respect to them during trial that Pelican urges. But it is still allowed to appeal a dismissal with prejudice of claims asserted in its earlier pleadings. *Id.* (explaining that when a pretrial dismissal of a claim is "on the merits or with prejudice, the plaintiff may appeal that ruling without needing to include the claim in a later amended complaint").

### III.

We thus may consider the merits of Ultraflo's appeal: whether its unfair competition by misappropriation claim is preempted by the Copyright Act. We review this question *de novo*. *GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 691 F.3d 702, 705 (5th Cir. 2012).

Section 301 of the Copyright Act preempts state law claims that fall within the general scope of federal copyright law. *Alcatel*, 166 F.3d at 785. It provides that:

> all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103 . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). This text is the source of the two-part test we use to determine if the Copyright Act preempts a state law cause of action. *Alcatel*, 166 F.3d at 785–86. Courts first ask whether the intellectual property at issue

5

is within the subject matter of copyright. *Id.* If it is, then a state law claim is preempted if it protects rights in that property that are equivalent to any of the exclusive rights within the general scope of copyright. *Id.*

## A.

The subject matter inquiry requires us to determine what intellectual property Ultraflo is seeking to protect. The design drawings themselves are undoubtedly within the scope of copyright protection;[3] they were the basis for the copyright infringement claim Ultraflo took to trial. But the unfair competition claim is not based on Pelican's copying the drawings. Ultraflo instead alleges that Pelican used the drawings to make replica valves. Because the valve design—the work in which Ultraflo asserts a right—is what was allegedly misappropriated, Ultraflo argues that its claim does not seek protection for a work protected by the copyright laws.

Ultraflo is correct that its valve design is not protected under the Copyright Act: it is either a useful article[4] or an idea.[5] Were the question

---

[3] Section 102 of the Copyright Act provides that "[w]orks of authorship include . . . pictorial, graphic, and sculptural works." 17 U.S.C. § 102. Section 101 defines "pictorial, graphic, and sculptural works" to include "technical drawings." 17 U.S.C. § 101. And design drawings are considered copyrightable technical drawings. *See Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990) (treating engineering drawings as copyrightable); *M–I LLC v. Stelly*, 733 F. Supp. 2d 759, 782 (S.D. Tex. 2010) (treating tool design drawings as copyrightable).

[4] A useful article is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." 17 U.S.C. § 101. Section 101 further states that "the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work [that is, copyrightable] only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.* Neither party disputes that the Model 390 butterfly valve design includes only utilitarian features and thus is not subject to copyright protection.

[5] "In no case does copyright protection for an original work of authorship extend to any idea [or] concept . . . regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

No. 15-20084

simply whether the work in which Ultraflo asserts a right is protected under the Copyright Act, its argument would carry the day.

The preemption statute, however, sweeps more broadly. It preempts state protection of works that fall within the subject matter (that is, the scope) of copyright, regardless whether the works are actually afforded protection under the Copyright Act. *Spear Mktg., Inc. v. BancorpSouth Bank,* 791 F.3d 586, 596–97 (5th Cir. 2015). "[S]cope and protection are not synonyms." *Id.* at 596 (quoting *U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.,* 104 F.3d 1453, 1463 (4th Cir. 1997)). As the Fourth Circuit put it, "the shadow actually cast by the Act's preemption is notably broader than the wing of its protection." *U.S. ex rel. Berge,* 104 F.3d at 1463.

This distinction led us to hold in *Spear Marketing* that state claims based on ideas fixed in a tangible medium of expression fall within the subject matter of copyright even though copyright law does not protect the mere ideas. 791 F.3d at 597. The parties disputed whether copyright preemption extended to state claims protecting the noncopyrightable material—ideas—contained in copyrightable works—a software program. *Id.* at 594. In finding that it did, we noted that to allow states to protect fixed ideas would intrude upon Congress's exclusion in section 102(b) of ideas from federal copyright protection. *Id.* at 596 (citing 5 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 19D.03[A][2][b]).

The result should be no different for the valve design that Congress also chose to exclude from copyright protection.[6] Indeed, the exclusion of useful articles from copyright protection is a corollary of the idea-expression

---

[6] A copyright treatise reaches the same conclusion in considering the preemption question for another type of subject matter that is excluded from copyright protection: typeface. HOWARD B. ABRAMS, THE LAW OF COPYRIGHT § 6:22 (2016) (concluding that if "Congress deliberately made certain classes of subject matter ineligible for federal copyright protection, as was clearly the case for typeface designs, then . . . the state law is preempted").

7

No. 15-20084

dichotomy that *Spear Marketing* rejected as a basis for the dividing line of when copyright preemption applies. *See Mazer v. Stein*, 347 U.S. 201, 217 (1954); *Durham Indus. v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("Just as copyright protection extends to expression but not ideas, copyright protection extends only to the artistic aspects, but not the mechanical or utilitarian features, of a protected work."). Congress's exercise of its power under the Copyright Clause to not provide protection for the embodiment of ideas in useful articles is entitled to preemptive force. Allowing state law to protect such works would undermine the "deliberate exclusion" of such subject matter from the federal copyright scheme. *Spear Mktg.*, 791 F.3d at 596.

B.

That the valve design is within the subject matter of copyright does not, on its own, mean that the state claim is preempted. As mentioned at the outset, the state law must also seek to protect rights equivalent to those "within the general scope of copyright." 17 U.S.C. § 301. This is determined by the "extra elements" test, which looks at whether "one or more qualitatively different elements are required to constitute the state-created cause of action being asserted." *Alcatel*, 166 F.3d at 787. If so, the state law protects rights different than those that the Copyright Act protects and there is no preemption. *Id.*

We have previously held that Texas's unfair competition by misappropriation cause of action[7] does not afford protection materially different from federal copyright law. *Id.* at 787–89. In doing so, we rejected Alcatel's attempt to satisfy the extra elements test by pointing to the state

---

[7] The elements of Texas's unfair competition by misappropriation are: (1) the creation by a plaintiff of a product through extensive time, labor, skill, and money; (2) the use of that product by defendant in competition with plaintiff; and (3) commercial damage to the plaintiff. *U.S. Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 218 (Tex. App.—Waco 1993, writ denied).

8

No. 15-20084

tort's elements of sweat equity and use against a competitor. *Id.* With respect to the former, we concluded "the time, labor, skill, and money expended by the author in creating the work are necessarily contemplated in [] copyright," which requires independent creation. *Id.* at 789. As to the latter, we held that reproduction or derivate use of a copyright by a competitor would suffice to show copyright infringement.[8] *Id.*

Ultraflo attempts to get around *Alcatel* by focusing on the special copyright status of drawings depicting useful articles. Although the Copyright Act provides the owner of such a drawing the exclusive right to reproduce the drawing itself, it does not grant the exclusive right to use the drawing to make the useful article depicted. *See* 17 U.S.C. § 113(b) ("This title does not afford, to the owner of copyright in a work that portrays a useful article as such, any greater or lesser rights with respect to the making, distribution, or display of the useful article so portrayed than those afforded to such works under the law . . . ."); 1 NIMMER, *supra*, § 2A.12. At first blush, it thus appears that Ultraflo's unfair competition by misappropriation claim protects a right that federal copyright does not: exclusive use of the copyrightable design drawings to make the depicted valves.

Again, however, the preemption inquiry operates on a more general level. The question is not whether state law provides a right identical to federal copyright law, but whether state law provides a right akin to those "*within the general scope of copyright* as specified by section 106." 17 U.S.C. § 301 (emphasis added). Among the exclusive rights generally provided to

---

[8] Ultraflo also contends that unfair competition by misappropriation is qualitatively different because it requires intent to engage in dishonest conduct. That a state law requires scienter as a condition to liability, however, does not save the state law from preemption. *See R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1148–49 (10th Cir. 2009) (holding that the addition of a scienter element did not render defendant's unfair competition claim qualitatively different from copyright infringement).

9

copyright holders in section 106 is the right to make derivative use of copyrighted works. 17 U.S.C. § 106. State claims protecting against such use by another thus are preempted by Section 301. *See Alcatel,* 166 F.3d at 789 (holding that plaintiff's unfair competition by misappropriation claim was preempted by the Copyright Act when plaintiff alleged defendant stole its software, used it to make microprocessors, and then distributed the microprocessors in competition with plaintiff); *M–I LLC v. Stelly,* 733 F. Supp. 2d 759, 784–85 (S.D. Tex. 2010) (holding that plaintiff's unfair competition by misappropriation claim, alleging defendant used, without permission, plaintiff's tool design drawings to make a competing product, did not supply a qualitatively different element and thus was preempted). Indeed, section 113(b), by carving out use of technical drawings to make useful articles from copyright protection, recognizes that such derivative use may otherwise be protected by the copyright laws.

Similar to what we saw with the subject matter inquiry, the "equivalent rights" inquiry thus looks not at the rights Congress actually provided but at the type of rights it has the power to confer. Withholding a particular right is part of the balance Congress struck between the need for copyright incentives and the value in public access to ideas. *See* H.R. REP. NO. 94-1476, at 105 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5720 (explaining that Congress, through section 113(b), reaffirmed the longstanding idea-expression dichotomy, which provides that ideas contained in copyrighted works are free to the public unless otherwise protected by patent law). Section 113(b), as a particular application of the idea-expression dichotomy, also plays a role in demarcating the boundary between copyright and patent law. *Id.*; *see generally Baker v. Selden,* 101 U.S. 99 (1879). To allow state law protection in this area that Congress excluded from the ambit of copyright thus would run afoul of the "'familiar doctrine' that the federal policy 'may not be set at naught, or its

No. 15-20084

benefits denied' by the state law." *Sears, Roebuck & Co. v. Stiffel Company*, 376 U.S. 225, 228 (1964) (quoting *Sola Elec. Co. v. Jefferson Elec. Co.*, 317 U.S. 172, 176 (1942)).

\*   \*   \*

The district court correctly held that the Copyright Act preempted Ultraflo's unfair competition claim. The judgment is AFFIRMED.